UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
GUS EUGENE PINCKNEY, *pro se*,

               Plaintiff,

               -against-

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security

               Defendant.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
06-CV-6625 (DLI) (JO)

**DORA L. IRIZARRY, United States District Judge:**

      Plaintiff Gus Eugene Pinckney filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act") on October 4, 2006. Plaintiff's application was denied initially and on reconsideration. Plaintiff testified at a hearing held before an Administrative Law Judge ("ALJ") on June 22, 2006, accompanied by a non-attorney representative. By a decision dated July 12, 2006, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. On October 13, 2006, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review. Plaintiff filed the instant action seeking judicial review of the denial of benefits, pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). The Commissioner now moves, unopposed, for judgment on the pleadings, pursuant to Rule 12 of the Federal Rules of Civil Procedure. For the reasons set forth more fully below, the Commissioner's motion is granted in its entirety. The court finds that the substantial evidence supports the ALJ's determination that plaintiff is not disabled and the ALJ properly applied the relevant law.

---

    [1]    Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michael J. Astrue shall be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this action.

## BACKGROUND

**A.     Non-medical and Testimonial Evidence**

Plaintiff, who was born in 1954, has a high school equivalency degree and attended one semester of college. (Tr. 83, 188.) Plaintiff primarily worked as a truck driver, delivering freight and unloading it at customer locations. (Tr. 80-81, 85-87, 90, 93-94, 114, 190-92.) He also worked briefly as a salesman in a hardware store, and as a porter, both of which required lifting. (Tr. 85, 88-89, 192-93.) Plaintiff has a personal and a commercial driving license. (Tr. 83, 193-94, 200.) Plaintiff ceased working on March 15, 2004, as he was suspended due to an accident. (Tr. 80.) Plaintiff received unemployment benefits through September 12, 2004. (Tr. 59.)

Plaintiff appeared at his hearing with a non-attorney representative, Carolyn Bell, of the Disability Services Program, Human Resources Administration ("HRA") (Tr. 181.) Previously, Maria Ovodenko, another non-attorney representative with the HRA, assisted plaintiff with his application. (Tr. 22.) Plaintiff testified that he became disabled on September 5, 2004, could walk at most three blocks, and could lift up to 45 pounds. (Tr. 47, 80, 169, 200-02.) He admitted to a history of cocaine abuse, but denied any substance abuse since 1998. (Tr. 199.) Plaintiff was diagnosed with HIV, diabetes, and hypertension, for which he takes Glipizide, Avandamet, Zocor, Quinapril, Sustiva, and Truvada. (Tr. 113, 196-97.)

**B.     Medical and Psychiatric Evidence**

**1.     Treating Physicians**

Prior to the hearing, the ALJ wrote to plaintiff's representative to inform her that the ALJ had received "virtually no medical records" from the plaintiff's treating physicians, despite attempts to obtain them. (Tr. 111.) There are no medical records of treatment prior to the alleged onset date,

2

September 5, 2004, although plaintiff indicated that he treated at Brookdale Hospital Medical Center ("Brookdale") for HIV and diabetes in 2004.

There are some records of treatment after the alleged onset date. Dr. Usha Karumudi, plaintiff's treating physician at the time of the hearing,[2] evaluated plaintiff in December 2004, diagnosing him with asymptomatic HIV, diabetes, and hypertension. (Tr. 121.) Dr. Karumudi indicated that plaintiff had no restrictions with respect to sitting, standing, walking, handling objects, communicating, traveling, understanding, responding, concentrating, adapting, or interacting with others. Dr. Karumudi indicated that plaintiff should limit lifting and carrying to "occasionally," but did not provide any specific weight restrictions. (Tr. 123-25.)

Plaintiff attended a psychology consult with Dr. M. Butler on January 24, 2005. Dr. Butler diagnosed plaintiff with dysthymic disorder and antisocial personality disorder, noting that his prognosis was fair. (Tr. 137.) Additionally, Dr. Butler indicated that plaintiff would have "mild to moderate difficulty at meeting interpersonal demands in an employment setting." (*Id*.)

Plaintiff also consulted with Dr. Antonio de Leon, M.D., on February 4, 2005. Dr. De Leon diagnosed plaintiff with diabetes mellitus, intermediate HIV infection, depression, and a history of alcohol and drug use, noting that his prognosis was poor. (Tr. 140.) Dr. De Leon indicated that plaintiff was able to perform "light to moderate activity," with a "mild" impairment with respect to sitting, standing, walking, lifting, carrying, and handling objects. (*Id*.)

Finally, Dr. Vincent Yeung, operated on plaintiff in August 2005. (Tr. 168.) A post-operative evaluation from Dr. Yeung indicates that Dr. Yeung diagnosed plaintiff with lymphoid hyperplasia,

---

[2] It appears that plaintiff now treats with Dr. Manoj Trehan and possibly Dr. Cheryl Croney (Tr. 113, 199). However, there are no records of visits with these physicians.

and plaintiff underwent a resection of a right paratid cyst and a parotidectomy on August 12, 2005. (*Id.*) There are no records of subsequent visits.

  2. **Agency Physicians**

A state physician reviewed plaintiff's medical records and completed a Residual Functional Capacity ("RFC") assessment on February 29, 2005. (Tr. 143-48.) The state physician concluded that plaintiff could lift up to twenty pounds occasionally, ten pounds frequently, that plaintiff could stand, walk, or sit up to six hours in an eight-hour workday, and that plaintiff had unlimited ability to push and pull. (Tr. 144.) The state physician found no other restrictions. (Tr. 145-46.) Dr. Max Brandt, an agency physician, evaluated plaintiff's medical records and completed a psychiatric review and RFC assessment on March 4, 2005. (Tr. 149-166.) Dr. Brandt diagnosed plaintiff with adjustment disorder. (Tr. 152.) In terms of the severity of plaintiff's illness, Dr. Brandt indicated that plaintiff had mild limitations with respect to daily living activities, social functioning, and concentration. (Tr. 159.) Dr. Brandt found no evidence of repeated episodes of deterioration. (*Id.*) In the mental RFC completed, Dr. Brandt found no limitations other than moderate limitations with respect to the ability to understand detailed instructions, to carry out detailed instructions, to interact with the general public, and to set realistic goals. (Tr. 163-64.)

**C.** **Vocational Evidence**

Dr. Steve Gumerman, a vocational expert, reviewed plaintiff's file and testified at the hearing. Dr. Gumerman indicated that an individual with plaintiff's limitations could not perform his past relevant work. (Tr. 208.) Dr. Gumerman indicated that plaintiff's driving skills were transferrable and that plaintiff could work as a courier (a light-package delivery person). (Tr. 208-09.) Plaintiff's mental limitations would not impede his ability to work as a courier. (Tr. 212.) Dr. Gumerman

4

testified that courier positions are abundantly available in the local and national economies. (Tr. 209.)

## DISCUSSION

A.   **Standard of Review**

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §§ 405(g), 1383(c)(3). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (internal quotations omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also

5

appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJ's, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).

**B.     Disability Claims**

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months. *Id*. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. §§ 404.1520 and 416.920. If at any step, the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(b); 416.920(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education or work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental "ability to conduct basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c). Third, the ALJ will find the claimant disabled if his or her

6

impairment meets or equals an impairment listed in Appendix 1.[3] *See* 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's "residual functional capacity" in steps four and five. 20 C.F.R. §§ 404.1520(e); 416.920(e). In the fourth step, the claimant is not disabled if he or she is able to perform "past relevant work." 20 C.F.R. §§ 404.1520(e); 416.920(f). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(g). At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Carroll*, 705 F.2d at 642).

## C. ALJ's Decision

The ALJ engaged in the five-step analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920 to determine whether plaintiff was entitled to benefits. He resolved the first step in plaintiff's favor, finding that plaintiff had not performed substantial gainful activity since his alleged onset date, September 5, 2004. (Tr. 13.) He resolved the second step in plaintiff's favor, finding that plaintiff suffered from several severe impairments, namely, HIV, diabetes, and hypertension; however, the ALJ found that plaintiff's depression did not rise to the level of a severe impairment. (Tr. 14.) He resolved step three against plaintiff, finding that plaintiff's severe impairments—HIV, diabetes, and hypertension—did not meet or equal one of the impairments listed in Appendix 1. (*Id.*) At the fourth step, the ALJ found that, while plaintiff was not able to perform his past relevant work, he was able

---

[3]  20 C.F.R. pt. 404, subpt. P, app. 1.

to perform a "full range of light work." (Tr. 14-18.) Specifically, with respect to his physical impairments, the ALJ found that plaintiff was able to lift, carry, push, and pull up to twenty pounds occasionally, and ten pounds frequently; and to stand, walk, and sit up to six hours in an eight-hour workday. (Tr. 14-15.) With respect to his mental impairments, the ALJ found that plaintiff was moderately limited in his ability to: (i) understand, remember, and carry out detailed instructions, (ii) interact appropriately with the general public, and (iii) set realistic goals. (Tr. 15.) At the fifth step, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. (Tr. 20.) The ALJ supported this conclusion by finding that plaintiff's ability to perform light work, coupled with his transferrable driving skill, rendered him able to work as a courier (a light-package delivery person), and that such positions were available in abundance in the local and national economies. (Tr. 18-19.)

### D. Application

The Commissioner seeks judgment on the pleadings, contending that the ALJ's RFC finding is supported by the record, and that there is a significant number of jobs that plaintiff can perform. (Gov't Mem. at 12-16.) Plaintiff, despite having been provided the opportunity to do so, did not oppose the instant motion. Nevertheless, the court will view the facts most favorably to plaintiff, the non-moving party. Moreover, the submissions of a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

#### 1. Impairments

Plaintiff alleges that he suffers from HIV, diabetes, and hypertension, and that these impairments render him disabled. (*See generally* Compl.) The ALJ found that these impairments were severe, meaning they had an effect on his ability to function but that none of them met or

equaled the requirements of the impairments listed in Appendix 1. (Tr. 14.) To meet or equal the requirements for HIV, claimants must demonstrate the existence of one or more complications, for example, a bacterial, viral, fungal, protozoan or helminthic infection, wasting syndrome, diarrhea lasting one month or longer, cardiomyophathy, pneumonia or nephrophathy. 20 C.F.R. pt. 404, subpt. P, app. 1 § 14.08. According to Dr. Karumudi, plaintiff's treating physician, plaintiff's HIV infection is asymptomatic. (Tr. 121.) To meet or equal the requirements for diabetes, claimants must demonstrate neuropathy, acidosis occurring at least once every other month, or retinitis proliferans. 20 C.F.R. pt. 404, subpt. P, app. 1 § 9.08. Neither plaintiff's treating physicians nor agency physicians indicated that plaintiff suffered from any of these complications. To meet or equal the requirements for hypertension, claimants must demonstrate that their hypertension is of such a degree that it negatively impacts other organs and systems. 20 C.F.R. pt. 404, subpt. P, app. 1 § 4.00(H)(1). There is no evidence from treating or agency physicians that plaintiff's hypertension impacts other organs or systems. The evidence supports the ALJ's determination that none of these impairments is equal in severity to those found in Appendix 1.

Additionally, plaintiff suffers from affective disorder (depression). The ALJ did not find this impairment to be severe because it did not limit plaintiff's ability to function. (Tr. 14.) To meet or equal the requirements for affective disorder, claimants must demonstrate one or more symptoms ("A" criteria) and a marked ability to function in several categories, or repeated episodes of decompensation ("B" criteria). 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04. Plaintiff cannot establish the "B" criteria. Neither his treating psychiatrist nor the agency consults found that plaintiff suffered from any marked limitations or any episodes of decompensation. The evidence supports the ALJ's determination that plaintiff's affective disorder is not a severe impairment.

## 2. Residual Functional Capacity

The ALJ found that plaintiff retained the ability to perform light work. (Tr. 14-15.) Every physician that evaluated plaintiff concluded that he could perform light work. Plaintiff's treating physician, Dr. Karumudi, indicated that plaintiff's only physical limitation was that he should not lift, carry, push, or pull weight more than occasionally. (Tr. 123-25.) Dr. De Leon indicated that plaintiff was able to perform "light to moderate activity," with a "mild" impairment with respect to sitting, standing, walking, lifting, carrying, and handling objects. (Tr. 140.) With respect to mental impairments, Dr. Butler indicated that plaintiff would have "mild to moderate difficulty at meeting interpersonal demands in an employment setting." (Tr. 137.) In the mental RFC completed, Dr. Brandt found no limitations other than moderate limitations with respect to the ability to understand detailed instructions, to carry out detailed instructions, to interact with the general public, and to set realistic goals. (Tr. 163-64.) Further, plaintiff denied any major depressive symptoms, denied attending regular therapy, and denied taking medications for depression. (Tr. 136, 203.) The evidence supports the ALJ's finding that plaintiff is able to perform light work.

The ALJ found plaintiff's description of the intensity, duration and limiting effects of his symptoms "not entirely credible." (Tr. 16.) A claimant's statements regarding symptoms and limitations must be considered in addition to medical evidence as "symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 416.929(c)(4). "The extent to which an individual's statements about symptoms can be relied upon as probative evidence . . . depends on the credibility of the statements." *See* 20 C.F.R. § 416.929(d)(4). After reviewing all the evidence, "the adjudicator may find all, only some, or none of the individual's allegations to be credible," or find statements "credible [only] to a certain

degree." *Id*. A claimant's work history may serve as probative evidence of his or her credibility. *See Schaal v. Apfel*, 134 F.3d 496, 502-503 (2d Cir. 1998) ("An ALJ should explore a claimant's poor work history to determine whether her absence from the workplace cannot be explained adequately (making appropriate a negative inference), or whether her absence is consistent with her claim of disability."); *see also* 20 C.F.R. § 416.929(c)(3). In any event, "allegations of pain or other symptoms" will not "raise the severity of a claimant's impairment(s) to that of a listed impairment" when key signs or laboratory findings are missing or deficient. 20 C.F.R. § 416.929(d)(3).

Plaintiff's testimony with respect to the intensity, duration and limiting effects of his symptoms contradicts the objective medical and diagnostic findings of his physicians. (Tr. 121-41.) Further, plaintiff's work history does not bolster his credibility. He was unable to provide any information as to the names or locations of his employers for several years. He was unable to account for or provide evidence of earnings for several years. (Tr. 114, 189-93.) The evidence supports the ALJ's credibility findings.

### 3. Available Employment

The ALJ found that plaintiff could work as a courier (a light-package delivery person) and that courier positions are available in the local and national economies. (Tr. 18-20.) To reach this conclusion, the ALJ considered plaintiff's age, education, and work experience in conjunction with Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, subpt. P, Appx. 2. (Tr. 19.) The ALJ relied upon the testimony of Dr. Gumerman, a vocational expert. Dr. Gumerman reviewed plaintiff's medical records and fully credited plaintiff's testimony in making his determinations. Dr. Gumerman indicated that plaintiff's driving skills were transferrable and that this skill coupled with plaintiff's mental and physical RFC evaluations indicated he could work as a courier. (Tr. 208-09, 212.) Dr.

Gumerman testified that these positions are abundantly available in the local and national economies. (Tr. 209.) Based on the foregoing, the evidence supports the ALJ's determination that plaintiff is not disabled as plaintiff could work as a courier.

### 4. Duty to Develop the Record

An "ALJ, unlike a judge in a trial, must himself affirmatively develop the record." *Echevarria v. Sec. of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (citations omitted). With respect to treating physicians, ALJs must seek additional evidence or clarification when a report "contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R § 404.1512(d); *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Prior to the hearing, the ALJ informed plaintiff's representative that he had received few medical records from plaintiff's physician, despite several attempts to obtain them. (Tr. 111.) Neither plaintiff nor his representative submitted additional records at the hearing. Further, they failed to respond to other requests from the ALJ in preparation for the hearing. (Tr. 181-84.) The ALJ discharged his duty to develop the record. Moreover, it does not appear that additional records would have changed the ALJ's disability determination. All of plaintiff's treating physicians indicated that he was able to perform light work. (Tr. 123-25, 137.) Plaintiff's own testimony supports a finding that he is able to perform light work. He indicated that he can lift up to forty-five pounds and that he handles housework and shopping on his own. (Tr. 202-04.) He made no mention of limitations with respect to standing or sitting. (Tr. 201-02.)

## CONCLUSION

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings is granted in its entirety.

SO ORDERED

DATED:      Brooklyn, New York
               March 17, 2009

                                            _____/s/_____
                                                DORA L. IRIZARRY
                                           United States District Judge